for Life and Health Insurance. Good morning. My name is Jim Ford. I represent George Bowers. I'm the president of the North American Company for Life and Health Insurance. Mr. Bowers is approximately 80 years old and he owns a flooring company on the square in downtown Hartwell, Georgia, which his daughter now runs because he's retired. And, of course, this is a lawsuit on a life insurance policy that he purchased on the life of his wife back in 1987. And there are two issues which I think need to be addressed in this oral argument. The first issue is our contention that what was called an adjustable life insurance policy is ambiguous because it contains contradictory statements about the amount of premium, which is what the policy called it, or as the district court described it, about the amount of the investment in cash value of the policy that was required of the insured. In the district court's order, which granted summary judgment to North American Insurance Company, I thought Judge Land did an excellent job of going through the policy and explaining his view of how the policy worked. He explained that what the policy plainly called a premium was not really a premium but was an investment in the policy's cash value. And he went through the whole process of talking about or writing about as long as there was enough cash value to cover the monthly cost of insurance, everything was copacetic. But if the cash value ran out, then the insured was going to have to come up with additional funds to pay the monthly cost of coverage. And what was really taking place, which I don't have any argument with, was that instead of it being a $750 premium every year, it was a situation where the North American deducted the cost of insurance from the cash value on a monthly basis. And then the court explained that after the cash value became depleted in 2007, 20 years after the policy had taken effect, the insurance company started sending what they call grace period notices, which set out different amounts of money that Mr. Bowers would have to pay to keep the policy in effect. And I made a mistake in my initial brief about these grace period notices. I thought from studying the policy that when they sent a grace period notice, the insured had to pay another $750 premium. That's not really what happened. And Judge Land explains this in his order. What happened was the insurance company would send a grace period notice for whatever amount was beyond the cash value, $50, $100. I think one time it was $43.16 or something like that. Every time the insurance company sent a grace period notice to Mr. Bowers, he'd send him a check not for $43.16 but for $750. And the cumulative effect of it was the same. As long as there's enough money in the cash value to pay the coverage, he wouldn't get a grace period notice. But when that $750 ran out, he'd get another grace period notice. And of course, in February of 2014, he failed to pay a $100 grace period notice because he was deathly ill in the hospital and just didn't know about it. But in any event, the court, the district court, concluded that North America had acted in accordance with the plain language of the policy when Mr. Bowers failed to pay the full amount of the premium in February of 2014. I take exception to that, not because of Judge Land's analysis, but because his analysis is contradicted by other terms of the policy. And I went back when I was getting ready for this oral argument and I started asking myself a question. I said, well, is an ambiguity and a contradictory statement the same thing? I need to be clear about that. And there are several Georgia cases which do hold that ambiguity and contradictory means the same thing. They're not cited in the version. Can I ask you, Mr. Ford, the result, if we accepted your argument, what would the remedy be? I'm sorry? If we accepted your argument that the policy is indefinite, what would the remedy be? Doesn't that mean the whole policy is just void? What I think should happen is that Mr. Bowers would be entitled to the policy benefits. He'd also be entitled to be repaid any monies he paid over and above what the policy construed in a light favorable to the insured would have required. I mean, and you think that's a principle of Georgia law? I can't calculate that. I mean, I've read that policy a dozen times. I can't possibly calculate what it would be. There's kind of a kicker because he took out a cost-of-living rider which he kept for about 10 years and then wrote the insurance company and said, please remove that from the policy because I don't want to pay more than the $750 annual premium. But he did pay more than the $750 on several occasions, didn't he? Yes. But he did pay more than $750 on several occasions, didn't he? Well, it's unclear whether they changed the death benefit from what it would have been back to $100,000, but Mr. Bowers clearly expressed his intent that he didn't want it to be more than $100,000 because he didn't want to pay more than a $750 premium. And the contradictory provisions in the policy which contradict Judge Land's analysis are several. Number one, the planned periodic premium, according to the policy, $750 payable annually. The initial premium, $750. The policy cost and benefit information sheet states that the annual premium, $750 for each year of the policy's projected life, and it set out a list of each year of the policy's projected life. The annual display of coverage did the same thing, $750 a year for each year of the policy's projected life. And the policy application stated that the total annualized premium was $750. So we've got an analysis by the district court, which I don't have a great deal of argument with, but that analysis is contradicted by clearer terms of the policy that state that the premium is $750 annually. So when you've got a contradiction, what do you do? The cases clearly say that the policy has got to be construed favorably to the insured. And if you carefully read the district court's construed the policy, the district court actually applied the rules of construction to determine that the terms of the policy were plain and unambiguous. That's not allowed. If the terms of the policy were plain and unambiguous, there would be no reason for the district court to have construed the policy. But Judge Land clearly stated in his order that he found that the reasonable insured, in other words, the reasonable expectations of an insured, would have been consistent with his analysis. So number one, we believe the policy was clearly contradictory. And then number two, which is even more to the point, the policy is indefinite as to the amount of premium or the amount of monthly deduction the insured has got to pay. One paragraph of the policy states as follows, the current cost of insurance and the current interest rate may be changed at our discretion but will not be less favorable than those guaranteed in the policy. Well, if they got the right to change the monthly deduction by changing the interest rate and changing the cost of insurance, there's no way to know or to be able to figure out any key as to what he has to pay. And the policy goes on to say that the annual policy goes on to say that the interest rate, the guaranteed interest rate can be changed at our option. So there's no way that any reasonable insured can figure out or has any method to determine the price he or she has to pay for this coverage. And of course, when it's indefinite, when the price is indefinite, there's no contract. So our position about, to answer the same question there, our position about that point would be that these additional charges over the charges which should have been charged should be set aside and Mr. Bower should be entitled to the benefits of the life insurance policy. Thank you. Mr. Ford, you've saved five minutes for rebuttal, so we'll hear from you again. Ms. Doolin. Good morning. Excuse me. Good morning, and may it please the Court, counsel. My name's Elizabeth Doolin. I represent North American Company for Life and Health Insurance. In addition with me is Henry Pietrakowski, who's Senior Counsel for North American Company for Life and Health Insurance, as well as my Georgia colleague, Ken Coppedge. Your Honors, Appellant asked this Court to disregard the complete language of the policy, which Georgia law holds you must construe as a whole, in favor of a narrow focus on one concept, the idea of an annual premium, which Appellant would also have you find was fixed and unchanging. But the policy doesn't use the words fixed annual premium. But it does use the word premium. It certainly does use the word premium, Your Honor. It uses the words planned periodic premium in Section 14 of the policy and explains in that section exactly how that premium works, together with the other provisions of the policy. So we're certainly not contending that it doesn't use the word premium, but the language and the provisions of the policy explain exactly how those planned periodic premiums work. You know, and those — I agree with Mr. Ford that Judge Land did a good job with this case. But the story is — I mean, this is my theme for the morning, I guess, in terms of — I mean, we've got to write an opinion in this case. And, you know, the story of an 80-year-old man, now 80, you know, whose family bought this policy in 1987, paid on it through 2014, and then it lapses about six months before his wife, whose life was insured, it lapses for his failure to pay $100 after all those years, is — I mean, I would think that that would be a story that your company wouldn't want to have in the Federal Reporters. Well, Your Honor, I would respectfully submit there are other aspects of that story as well. There are aspects of the story that when this policy was originally purchased, the owner made a choice to pick a $750 premium, but also made the choice to elect a cost-of-living rider that increased the death benefit by $8,000 every year. And the record shows, Your Honor, that every year, in accordance with the terms of the policy, the policy owner got a notice about that increase that specifically advised the policy owner, this has increased your death benefit, this may increase the cost of your insurance. You may want to adjust the amount of premium you're paying to the apportionment. Does your client still sell this product? Pardon me? Does your client still sell products like this? Your Honor, this — this particular policy was originally issued by a successor company, but the idea of a flexible premium universal life policy is fairly ubiquitous. Nearly every insurance company sells these types of products. But in terms of the question you asked me about the story being told, there were choices that this policy owner made over the years about how he was going to apply the premiums to fund the cash value. The cash value also accrued an interest component. And the policy clearly sets forth, and I think counsel is correct, I agree, that the district court did an excellent job of laying out exactly how the provisions of this policy all worked together. The fact that there was a monthly deduction from the cash value every month was not hidden or anything like that. It's not in any way unclear. It's in page 3 of the policy. And let me say, following up on Judge Martin's question, I hear what you're saying, but I mean just sort of the visuals of, if you will, 27 years of payment and then literally a few months before she dies, he misses a payment. I wonder if it would be helpful at all for you to consider going to mediation and trying to figure out, and trying one last time to work this out before we make a decision here. Well, and Your Honor, respectfully, the parties have engaged in mediation. That's true, but sometimes we find that after an oral argument it's helpful to do it again. And we have in the past sent parties back to mediation after oral argument. And if you can't work it out, then we'll decide the case. But sometimes the parties find that to be useful. I understand completely, Your Honor. And I believe my client's position is they are always open to discuss mediation. They were open to discuss mediation before we appeared before you today. We were open to discuss mediation before we briefed the case. And we're open to discuss mediation before Your Honor's ruling, certainly. But I would go back to, again, this is a contract. Like any other contract, it has clear, definite, and unambiguous terms. And while the results of a party making the choices they made may be difficult for that party, at the same time, this is the contract that the parties bargained for. And the fact that the impact of the choices that the policy owner made here about how he was going to pay his periodic premiums now have a negative effect doesn't make the contract suddenly ambiguous, doesn't change what the policy owner made. So I think the bottom line is that there's nothing unusual about an insurance policy that has multiple provisions that work together in harmony. I heard Mr. Ford talk about contradictory provisions in the policy. There are no contradictory provisions in the policy. As I said, the concept of a monthly deduction from the cash value appears on page 3 of the policy. And there's some very important language in the policy that I think the Court absolutely needs to consider. On that page 3 of the policy, it specifically says that coverage may expire not only if premiums aren't paid, but if premiums are insufficient to continue coverage up to the date of maturity, or if coverage may also be affected by a change in values. That's right there in the beginning of the policy. Now, appellant wants to say, no, there was a guaranteed $750 fixed, unchanging rate. But that's simply not what the policy says. Even the statement of policy cost and benefit values that counsel mentions in his brief repeatedly say at the bottom that that annual statement, which is a snapshot in time at the beginning of the policy's life, is not a projection of what's going to happen in the future, does not reflect the impact of the cost of living adjustment that this policyholder elected, and is not some sort of guarantee that the premium, the planned periodic premium, or the amount needed to keep coverage in force is going to be unchanging. Ms. Doolin, so you're highlighting the parts of the policy that say the amount of the payment, the total payment's indefinite, and the length of the contract is uncertain. Right. I mean, in other words, it can change over time. And, Your Honor, I wouldn't agree that because there is a built-in possibility for variability in values, that doesn't make the contract indefinite. In fact, those values are bounded by a guaranteed interest rate. But they can change over time. They can. And there's nothing in the law that says that the fact that the rates can change over time makes the contract unenforceable or indefinite. I'm really thinking about another argument that you're making, and that's that Mr. Bower's claims are barred by the statute of limitations. I mean, I just don't see how, you know, when the contract is kind of a, you know, a live, you know, I guess not negotiation, but it's a dynamic payment process. I mean, doesn't that mean that your statute of limitations argument fails? To the contrary, Your Honor. I think if you look at what is exactly being claimed by this appellant in his complaint, his complaint is based on the notion that he was guaranteed a fixed annual premium of $750 a year. That is the gravamen and the gist of his complaint. He is not complaining about the manner in which it changed. He's saying this contract is ambiguous because it says that my annual premium is $750 a year, and what he alleges in his complaint and in summary judgment is that my client breached that contract by requiring additional premium payments above and beyond the $750 a year. I'm going to try again. All right. Do you say that the contract is entire or divisible? Apologies. I couldn't hear what you said, Your Honor. Do you characterize the contract as entire or divisible? It's an entire contract, Your Honor. And I think if what you're getting at is because there are payments required periodically, that that means that there is a statute of limitations that runs each time, that's not what the case law in these types of cases says. The first time the breach happens, which according to plaintiff's complaint, is the first time he's required to pay more than $750 a year, that happens in 2007. That's when the contract's cash value was not sufficient to cover the monthly deduction, and he began getting grace notices in 2007 that told him you need to pay more than $750 a year. That is what claimant premium means. What about for his unjust enrichment claim? Your Honor, I think the difficulty with counsel's unjust enrichment claim is that essentially it's a repackage of his breach of contract claim. Procedurally, it fails because he's gone to the district court and affirmatively said there is a contract here. Well, what if there's no procedural failure for that argument? Then, Your Honor, I don't understand in any way how he can argue unjust enrichment when, again, the terms of what he's claiming he was entitled to were clearly provided to him. There has been no unjust enrichment here. He has received exactly what he paid for, insurance, for the duration of time that he was paying for that coverage. What he wants is to have continued coverage beyond the time he paid for it. That doesn't work under an unjust enrichment theory either. But I would submit that, again, the procedural violation here is completely dispositive. He has affirmatively stipulated to the existence of a contract. He can't, in the same breath, argue that he's — that my client has been unjustly enriched. Again, this was a — Well, people make alternative arguments all the time. I mean — Certainly at the pleading stage, Your Honor. But once you take the position in summary judgment that there is a contract here that entitles me to judgment, I believe the law in Georgia says at that point you are no longer talking about in the alternative. But again, Your Honor, even leaving that aside, there is no unjust enrichment when this policyholder was provided with insurance for years, paid for that insurance for years. What he wants is to continue to essentially get the insurance coverage without having to pay for the bargained amount. And what he's asking this Court to do is rewrite the contract in a way that would actually completely ignore all of its terms. Unless the Court has any additional questions for me, I would simply ask that this Court affirm the decision of the District Court. Thank you very much for your time and for your questions. All right. Thank you for your help. Your Honors, we're not asking the Court to disregard anything about the policy. As I try to state, my position simply is that the only definite price, the only definite amount that the insured was provided by this policy was that the annual premium was $750. The policy said that five times. So even if the other terms of the policy, as Judge Land's order explained, were in the view of a Federal District Court judge with a lot of law clerks, plain and unambiguous, the price issue, the price issue is still there. And there's no way this policy can be read to provide any insured with a definite price. There's no key. There's no method. There's nothing in the policy that tells an insured what he or she, what he or she's got to pay for this monthly cost of coverage. Mr. Fore, I want you to be able to make your argument, but I'm about to pop to ask this question, so may I? You know, the court provides a mediation service for free. I mean, right now, you're in this case for all or nothing, and maybe that's exactly where you want to be. But, you know, I mean, most cases that come up here on considered orders from district judges get affirmed. Right. So with that in mind, would you be willing to return to mediation on this case? Your Honor, I read some poetry last night that Theodore Dostoevsky wrote, and I never really paid a whole lot of attention to him until then, and I don't know why I came across it. But one of the phrases in his poems is, always listen, always consider the alternatives, and always do what's right. So the answer to your question is yes, of course. Thank you very much. All right. Thank you. And I didn't mean to cut your argument short. I didn't mean to cut your argument short. Certainly, if there's anything else you want to say. No, I mean. I like the Dostoevsky. I mean, even if the terms of the policy, as Judge Land tried to explain, are plain and unambiguous, the price issue is too indefinite to be enforced. And as far as the statute of limitations is concerned, you can't have, the statute doesn't run on the policy benefits until there's harm, and there wasn't harm until February of 2014. There may have been some additional premiums that Mr. Bowers paid back in 2007 that I guess technically could be barred, but those he paid within the six-year statute of limitations, which were unenforceable, should be reimbursed. Thank you very much. Thank you, Mr. Ford. Judge Martinez, are you, would you vote to send this to me? Oh, yes. All right. We have had a quick consultation, and you all can expect an order directing you to mediation, and I appreciate both sides being willing to do that. That concludes court for today. We're in recess until 9 o'clock tomorrow morning. All rise. It takes me a while to get up.